UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM BROCK and WILLIAM CALVERT,<br><br>Defendants. | No. 2:12-cr-00258 MCE<br><br>**ORDER** |

On July 19, 2012, a Grand Jury issued an Indictment charging William E. Brock IV ("Brock") and William C. Calvert ("Calvert") (collectively referred to as "Defendants") with two counts: (1) conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 846 & 841(a)(1) and (2) possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). (Compl., ECF No. 1.) Brock filed a Motion to Quash and a Motion to Suppress. (Def.'s Mot. to Quash, ECF No. 42, Def.'s Mot. to Suppress , ECF No. 45, and Def.'s Mem. in Supp. Of Mot. to Suppress, ECF No. 46.) Calvert also filed a Motion to Suppress Evidence and joined Brock's Motion to Quash Search Warrant. (Def.'s Mot. to Quash, ECF No. 44.) Generally, Defendants requested an order excluding all evidence against them because they allege it was all unlawfully obtained, in violation of their constitutional rights.

The Court held three motion hearings before reaching a decision.  (ECF Nos. 58, 64, and 69.)  Per Defendants' May 9, 2013 request, the Court granted Defendants an opportunity to file a supplemental brief.  (ECF Nos. 58, 59 and 62.)  Again, on May 30, 2013, the Court granted Defendants request to file another supplemental brief.  (ECF Nos. 64 through 67.)  After carefully considering all the papers filed in this case and all the oral arguments, the Court orally denied all Defendants' Motions.  (ECF No. 42, 44, and 45.)  This Order expands on the Court's reasoning.

## BACKGROUND[1]

In February 2011, Will County Sheriffs, Deputy Jason Schultz ("Dep. Schultz") and Sergeant Joseph Boers ("Sgt. Boers"), began investigating Brock because they believed he was distributing large amounts of marijuana in and around Chicago, Illinois.  On February 14, 2012, an Illinois court issued an Order for Leave to Monitor Tracking Transmitter in Private Areas ("February 14, 2012 Order").  On February 18, 2012, Will County Sheriffs installed the Global Positioning System ("GPS") on Brock's truck while it was parked in his driveway around 3:00 a.m.  Later, in February 2012, GPS data revealed that Brock's truck traveled to Sacramento, California, arriving there on February 26, 2012.  The GPS battery died on March 3, 2012, but Will County Sheriffs observed Brock at his home in Illinois on March 6, 2012.  On April, 9, 2012, an Illinois judge issued another order permitting the police to monitor Brock's vehicle with a GPS.

Meanwhile, a confidential source informed Will County Sheriffs that Brock used a storage unit in the Chicago metropolitan area to store the marijuana he transported from California.  By observing the data collected by the GPS, Will County Sheriffs were able to locate the storage unit in Sin Lisle, Illinois.

///

---

[1] The facts are largely taken from Brock's Memorandum in Support of the his Motion to Suppress. (ECF No. 46, Ex. A.)

2

Between April 18, 2012 and April 24, 2012, Will County Sheriffs also arranged a controlled buy of marijuana between Brock and a confidential source.

On April 22, 2013, Will County Sheriffs learned that Brock had flown to Sacramento to pick up a large amount of marijuana. Dep. Schultz contacted and informed Deputy Lou Wright ("Dep. Wright") of the Sacramento Sherriff's Office, High-Intensity Drug Trafficking Areas task force about the Illinois marijuana investigation. Using GPS data from the original February 2012 GPS, Dep. Wright determined that during Brock's February-March 2012 Sacramento trip, his truck had been at a storage facility near 3054 Elkhorn Boulevard. The next day, Sgt. Boers and Dep. Schultz flew to Sacramento to continue their investigation. On April 24, 2012, Dep. Wright sought a warrant to install a GPS on any vehicle in Brock's possession or on any vehicle that was suspected of being used to drive Brock while he was in California, which Sacramento County Superior Court Judge Greta Fall granted that day.

On April 25, 2012, Dep. Schultz and Sgt. Boers conducted surveillance at the storage facility near Elkhorn Boulevard. The officers saw Brock arrive at the storage facility in a white Ford pickup truck with a California license plate around 3:15 p.m. Dep. Schultz and Sgt. Boers contacted Dep. Wright and then followed Brock to a Wal-Mart store located on Watt Avenue in Antelope, California. Brock went into the store while Dep. Wright met with the Will County Sheriffs at the Wal-Mart parking lot. At approximately 5:50 p.m., Dep. Wright installed the GPS on the undercarriage of the same white Ford pickup truck Dep. Schultz and Sgt. Boers observed at the storage facility located near Elkhorn Boulevard. About five minutes later, Brock got back into the pickup truck and drove away. Dep. Wright, Dep. Schultz and Sgt. Bowers followed Brock. A few minutes later, Brock pulled into another store parking lot and crawled under the truck. Brock remained under the truck for two to three minutes before getting back into the truck and immediately leaving the lot.

///

///

Brock's actions led Dep. Wright to believe that Brock had a look out in the Wal-Mart parking lot who reported that Dep. Wright had been under the truck; Dep. Wright, Dep. Schultz and Sgt. Boers feared the investigation was ruined.

Sgt. Boers returned to the Elkhorn storage facility to conduct surveillance. Around 7:30 p.m., on April 25, 2012, Sgt. Boers saw Brock arrive at storage facility as a passenger in a silver minivan driven by Calvert. Sgt. Boers approached Brock after he opened the gate to the warehouse, spoke with Brock and detained him. Dep. Schultz and Dep. Wright arrived a few minutes later and informed Defendants that they were attempting to get a search warrant for Calvert's mini-van and the storage unit. Brock consented in writing to the search of his Illinois residence around 9:45 p.m. in the presence of Sgt. Boers and California police officers. While the officers were waiting for the search warrant, Brock made a number of incriminating statements. Around 11:25 p.m., Sacramento Superior Court Judge J. Hersher issued the search warrant.

Officers executed the warrant and searched Calvert's minivan and Brock's storage unit. In Calvert's minivan, agents found vacuum-sealed bags of marijuana weighing in total 295 pounds, a binder with medical marijuana recommendations for Calvert, receipts for the purchase of marijuana, and agreements for membership in various marijuana cooperatives. In Brock's storage unit, officers found more of the same brand vacuum-sealed bags containing marijuana weighing 414 pounds in total, 1,600 unopened or unused vacuum bags of the same brand, type and size as those in which marijuana was located, two vacuum sealer machines, a black and white book containing a pay-owe sheet, and $4,500 in cash. Officers also found $2,280 on Brock and $1,010 on Calvert. At approximately, 3:00 a.m. on April 26, 2012, Defendants were arrested and advised of their Miranda rights. Both invoked their rights.

Meanwhile, Illinois officers searched Brock's home and storage unit located in Illinois. Officers found silver bullion bars valued at $1.3 million dollars and $50,000 in cash in the Illinois storage unit.

///

In Brock's home, officers found vacuum-sealed bags that matched the brand found in the storage facility in California, two pounds of marijuana, and $130,000 in cash.

**STANDARD**

The Fourth Amendment protects people "against unreasonable searches and seizures" and requires a warrant based "upon probable cause" before the government can search or seize, "persons, houses, papers, and effects." U.S. Const. amend. IV. "A vehicle is an effect as that term is used in the Amendment. U.S. v. Jones, 132 S. Ct. 945, 949 (2012) (internal quotations omitted). Thus, a warrantless search is per se unreasonable unless it falls within a recognized exception. Missouri v. McNeely, 133 S. Ct. 1552, 1558 (2013).

**ANALYSIS**

Defendants made several arguments, but the crux of Defendants argument is that all evidence against Defendants should be excluded because all the incriminating evidence is a result of the warrantless installation of a GPS on Brock's truck in his driveway at 3:00 am on February 18, 2012. To make this argument, Defendants rely heavily on U.S. v. Jones, 132 S. Ct. at 949, which held that "the [g]overnment's installation of a GPS to a target's vehicle and its use of that device to monitor the vehicle's movements, constitutes a search" under the Fourth Amendment. Next, Defendants argue that the February 14, 2012 Order for Leave to Monitor Tracking Transmitter in Private Areas ("February 14, 2012 Order"), is not a warrant despite the probable cause finding included in it. (ECF No. 42, Ex. A.) Then, Defendants argue even if the February 14, 2012 Order was a warrant, Will County Sheriffs disregarded the judge's instruction to install the GPS in "any public location where it might be found." (Id.)

5

1  Defendants contend that Will County Sheriffs installed the GPS on Brock's truck in the
2  "curtilage" of his home.  Oliver v. U.S., 466 U.S. 170, 180 (1984).  Finally, Defendants
3  argue that even if the February 14, 2012 Order was a warrant, it violated Federal Rule of
4  Criminal Procedure 41(e)(2)(c), which provides that "the warrant must command the
5  officer to . . . perform any installation authorized by the warrant during the daytime."
6       The Court granted Defendants an opportunity to file supplemental briefs about
7  whether the Bock's driveway at his Illinois residence was curtilage under the Fourth
8  Amendment and whether the nighttime installation of the GPS on Brock's truck was
9  permissible.  Both Brock's and Calvert's counsel vigorously defended their clients, but
10 they were unable to prevail under controlling law.

**A.    The February 18, 2012  GPS Installation Does Not Violate Jones**

14     First, Defendants argument that the February 14, 2012 Order was not a warrant is
15 unpersuasive.  Defendants argue that the February 14, 2012 Order does not contain the
16 specific word "warrant" and, therefore, it is not a warrant.  Without a warrant, Will County
17 Sheriff's installation of a GPS on Brock's truck would conflict with U.S. v. Jones, which
18 held that "the [g]overnment's installation of a GPS on a target's vehicle, and its use of
19 that device to monitor the vehicle's movements, constitutes a search."  132 S. Ct. at 949.
20 The major problem with Defendants' argument is that Will County Sheriffs obtained a
21 court order before installing the GPS on Brock's truck.  Defendants do not cite any case
22 law that states the specific word "warrant" must appear in a document to comply with the
23 warrant requirement under the Fourth Amendment.  To be valid, a warrant must be
24 issued by a "neutral and detached magistrate" who has determined that there is a
25 "substantial basis" for probable cause.  See, e.g., Coolidge v. New Hampshire, 403 U.S.
26 443, 449 (1971); Illinois v. Gates 462 U.S. 213, 239 (1983).  Probable cause is a "fluid
27 concept not readily or even usefully reduced to a neat set of legal rules."
28 ///

<u>United States v. Stanert</u>, 762 F. 2d 775, 778 (9th. Cir. 1985). Thus, "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision" . . . whether "there is fair probability that contraband or evidence of a crime will be found in a particular place." <u>Id.</u> at 778-79 (citing <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983)). The February 14, 2012 Order states "[t]here is probable cause to believe that the 2010 white Ford XLF pickup . . . described in government's application, will be used to further offenses of Cannabis Trafficking and Unlawful Delivery of Cannabis." (ECF No. 42, Ex. A.) Dep. Schultz's affidavit requesting the order is attached to the February 14, 2012 Order as well. Because Will County Sheriffs obtained a court order from a neutral and detached magistrate who concluded there was probable cause to install the GPS on Brock's truck, the installation was not a warrantless search and <u>Jones</u> is inapplicable.

**B.     Brock's Driveway is Not Curtilage for Fourth Amendment Purposes**

Second, Defendants argue that the February 14, 2012 Order limited the Will County Sheriffs to installing the GPS on Brock's truck in "any public location where it might be found." On February 18, 2012 Will County Sheriffs installed the GPS on Brock's truck while it was parked in Brock's driveway, which Defendants now allege is part of the curtilage. Curtilage is the area "immediately surrounding and associated with the home" which is considered "part of the home itself for Fourth Amendment purposes." <u>Florida v. Jardines</u>, 133 S. Ct. 1409, 1415-15 (2013) (quoting <u>U.S. v. Oliver</u>, 466 U.S. 170, 180 (1984)). Defendants argue that <u>Jardines</u> changed the definition of curtilage, but in reality the <u>Jardines</u> decision reaffirmed the curtilage definition the court used in <u>Oliver</u> and merely concluded that "the front porch is the classic exemplar of an area adjacent to the home and "to which the activity of home life extends." (<u>Id.</u>)

Brock's counsel failed to cite a case with any precedential value that held that a driveway was considered curtilage for Fourth Amendment purposes. (Brock's Supplemental Br., ECF No. 59.)

However, the government directed the Court's attention to the only instance where the Ninth Circuit concluded that a driveway was part of the curtilage. See United States v. Depew, 8 F. 3d. 1424, 1428 (9th Cir. 1993) (overruled on other grounds by U.S. v. Johnson, 256 F.3d 895, 912 (9th Cir. 2001). In Depew, the Ninth Circuit reversed a denial of a motion to suppress, finding that a driveway was curtilage where the front yard was surrounded by a low picket fence, the defendant had posted no trespassing signs, the defendant was a practicing nudist who walked nude in his driveway (thus using it in a manner that indicated it was private area), mail carriers and meter readers did not visit his residence and his home was located in a secluded remote rural location. Depew, 8 F. 3d. 1424 at 1428. The remaining Ninth Circuit cases conclude that a driveway is not part of the protected curtilage under the Fourth Amendment. See United States v. Magana, 512 F. 2d 1169, 1171(9th. Cir 1975) ("[a] driveway is only a semiprivate area". . . the expectation of privacy depends "on the nature of the activities and the degree of visibility from the street"); United States v. Humphries, 636 F. 2d 1172, 1179 (9th. Cir. 1980) (concluding that police entry into defendant's barrier-less driveway did not violate any reasonable expectation of privacy held by defendant); United States v. Roberts, 747 F. 2d 537, 542 (9th. Cir.1984) ("a shared unobstructed road is incongruent with common law conception of the curtilage" because a "private road does not provide the setting for intimate activities of home life" instead the "activities conducted on a road . . . are impersonal, public activities"); Maisano v. Welcher, 940 F. 2d 499, 503 (9th Cir. 1991) (defendant had no reasonable expectation of privacy in his driveway because defendant failed to provide any evidence to support that expectation "by detailing the special features of the driveway itself (i.e. enclosures, barriers, lack of visibility from the street) or the nature of activities performed upon it"); United States v. McIver, 186 F. 3d 1119,1215 (9th. Cir. 1999) (abrogated on other ground by United States v. Jones, 132 S. C. 945, 949 (2012) (concluded a warrant was not necessary to enter defendant's driveway); U.S. v. Pineda-Moreano, 591 F. 3d 1212 (9th Cir. 2009) (abrogated on other grounds by United States v. Jones, 132 S. Ct. 945, 949 (2012)

("Since defendant had not taken steps to exclude passerby from his driveway he did not have a reasonable expectation of privacy to the area.").)

The government argues Depew is easily distinguishable from the case at hand. Brock's lawyer submitted a Google Earth image of Brock's home in Brock's Motion to Quash Search Warrant and Suppress Evidence Court and at the May 9 motion hearing. (ECF No. 42, Ex. F.) The image shows that Brock lives in a congested area, not a remote, rural area. Brock's Counsel also failed to provide the Court with any evidence that Brock took steps to make his driveway a private place by installing enclosures, barriers, or somehow blocking its visibility from the street. Similarly, the Court is unaware of any evidence that Brock engaged in private activities in his driveway like practicing nudism, as illustrated in Depaw.

**C.    Nighttime Installation of the GPS on Brock's Truck Was Permissible**

Defendant Brock's counsel argues that the Will County Sheriffs decision to install a GPS at 3:00 a.m. "flagrantly transgressed" the February 14, 2012 Order's bounds. (ECF No. 66.) Defendant Brock's counsel also argues that Federal Rule of Criminal Procedure 41, Search and Seizure, governs this scenario because it provides that a warrant must command the officer to "perform any installation authorized by the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time." Fed. R. Crim. P. 41(e)(2)(C)(ii). In this case, the February 14, 2012 Order does not provide any instruction on when the warrant should be executed. (ECF No. 42, Ex. A.)

The government counters that 21 U.S.C § 879 applies, which states that:

> [a] search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate judge issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time.

In <u>Gooding v. United States</u>, 416 U.S. 430, 436-437 (1974), the Supreme Court held that § 879's specific rules regarding search warrants relating to drug offenses applied over the more general rules governing search warrants under Rule 41. Federal Courts of Appeals continue to cite <u>Gooding</u> as meaning that "when a search involves violations of drug crimes, the warrant can be served day or night so long as the warrant itself is supported by probable cause . . . and to the extent that § 879 might be found to conflict with the general requirement of showing good cause for nighttime searches contained in Rule 41(e), we hold that § 879 applies exclusively." <u>United States v. Rizzi</u>, 434 F.3d 669, 674 (4th Cir. 2006); <u>see</u> <u>also</u> <u>United States v. Tucker</u>, 313 F.3d 1259, 1264 (10th Cir. 2002); <u>United States v. Burch</u>, 156 F.3d 1315, 1325 (D.C. Cir.1998); <u>United States v. Keene</u>, 915F.2d 1164, 1168 (8th Cir.1990).

      Defense counsel and the government agree that "the Fourth Amendment's touchstone is reasonableness and a search's reasonableness is determined by assessing on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed to promote governmental interests." <u>U.S. v. Knights</u>, 534 U.S. 112, 118-19 (2001); <u>see</u> <u>also</u> <u>Brigham City, Utah v. Stuart,</u> 547 U.S. 398, 403 (2006). Thus, the Court balances the intrusion on Brock's privacy with the government's need to install the GPS on Brock's car at 3:00 a.m. to further its drug investigation. In this case, the Will County Sheriffs had a legitimate interest in an effective criminal drug investigation. The likelihood of detection increases when police install tracking devices during the day, and detection would have ruined the investigation. This risk became reality when Dep. Wright installed a GPS at 5:00 p.m. in the Wal-Mart parking lot on April 25, 2012. Almost immediately, Defendant Brock discovered the GPS. Will County Sheriffs installed the GPS at 3:00 a.m. on Brock's truck while it was parked in his driveway (lacking any privacy enhancements) in a residential neighborhood.

///

///

Brock's counsel argued the police's 3:00 a.m. installation was unreasonable because "as a matter of safety, this practice risks substantial danger, in the event that an occupant, who could be armed, felt compelled to defend against a perceived home invasion." (ECF No. 66.) "The Supreme Court . . . has never held that the Fourth Amendment prohibits nighttime searches." Rizzi, 434 F.3d at 675. Instead, the timing of the search affects its reasonableness. Youngbey v. March, 676 F.3d 1114, 1124 (D.C. Cir. 2012). In this case, the Will County Sheriffs who installed the GPS on Defendant Brock's car had a court order permitting it, and they installed it in the middle of the night to avoid detection and potentially destroying the investigation in its infancy. Thus, the Court concludes the February 18, 2012 nighttime installation was reasonable.

**CONCLUSION**

The reasoning above describes the Court's rationale on the most briefed and contested issues. The following motions are DENIED:

1. Brock's Motion to Quash Search Warrant and Suppress Evidence (ECF No. 42);
2. Calvert's Motion to Suppress (ECF No. 44); and
3. Brock's Motion to Suppress (ECF No. 45.).

IT IS SO ORDERED.

Dated: August 14, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT